BROWN & FLEWELLEN AND A. L. C. HURST v. D. D. DURHAM.

No. 146.

1. Libel—Necessary Allegations in Petition.—In an action for libel the petition should specify by direct allegations in what particulars the language used was libellous, and the right of recovery should be restricted to the matters thus put in issue. A mere reference to exhibits, to supply the place of substantial allegations, should not be indulged.

2. Admissible Evidence in Libel Suit.—The Retail Merchants' Protective Association published a circular disclosing the plan and purposes of the association, and therein proposed to supply its patrons with a book with the names of many thousand merchant breakers in Texas, to be supplemented every sixty days with as many more as failed to make satisfaction within a reasonable time for claims passing through the agency, and in such a list the association afterwards placed the name of appellee. *Held*, there was no error in admitting in evidence the list containing the name of appellee, or the circular disclosing the

plan and purposes of the association. The list was the foundation of the action, and the circular tended to explain the effect and significance of the list.

**3. Same — Letter of the Manager of the Association.** —There was no error in admitting in evidence the letter from the manager of the association to one Pinkham. Though it was written after the suit was brought, it contained expressions which tended to show the writer's animus towards the plaintiff, and was admissible for that purpose, its purpose having been properly explained by the charge.

**4. Inadmissible Evidence in Libel Case — Damages. —** When witnesses stated that they did not know plaintiff, but that his credit would have been injured by the publication in question, and that the effect and tendency thereof would be to damage the commercial standing of any man; and that while they would have sold him goods previous to such publication, upon proper recommendation, they would not have done so thereafter, was not admissible, being the opinion of the witnesses.

**5. Charge.**—When an omission is found in one clause of the charge which is supplied by another, there is no reversible error.

**6. Privileged Communications.**—No privilege allowed by law to defendants to communicate with each other, and to impart any information which the occasion made necessary and proper, can be made available here.  B. and F. had the right to place their claim in the hands of the association for collection, but neither of them was privileged to publish to others false or defamatory statements concerning the plaintiff, or denouncing him to others as a "merchant breaker," etc.

**7. Same—Statements, True and False.**—If the statements were true, there would be no cause of action; but if the effect of the list issued was to insinuate concerning plaintiff such charges as claimed by him, and if they were false, there is no privilege which would shield defendants from recovery of damages thereby occasioned.

APPEAL from Gregg.    Tried below before Hon. FELIX J. McCORD.

*Davis & Terry*, for appellants.— 1.   The testimony of the witnesses Rogers, Schleuter, and Wise was clearly inadmissible in evidence, because their answers were based upon an hypothesis, and neither one of them knew either of the parties to the suit.    Their answers do not fall within the rule of expert testimony, or where the witness examined has the right to give an opinion.    24 Texas, 170; 61 Texas, 733; 13 Ala., 510; 10 Johns., 281; 23 Wend., 430.

2.   It is a fixed principle, that in order to make matter libellous within itself, the publication of the same must not only be defamatory, but false; and if the matter alleged is privileged (as asserted by appellants in this case), in order to sustain an action for the same, malice must be shown to exist by the facts and circumstances, or either, and not inferentially.

3.   The court erred in permitting plaintiff to read in evidence exhibits B and C to plaintiff's original petition.

*H. McKay*, *Richard B. Levy* and *DeGraffenried & Blanton*, for appellee.
1.   Exhibits B and C, written instruments, circulated together, and

being so circulated are libellous and defamatory. 13 Am. and Eng. Encycl. of Law, 437, art. 3a; Newell v. How, 31 Minn., 235; Newhold v. Bradstreet, 57 Md., 38.

2. Appellants' third assignment refers to admitting part of letter of Hurst to Pinkham. Whenever the state of a person's mind is in issue, everything that can throw light on the state of his mind, although it happened on some other occasion, is admissible. Appellee only offered the part which referred to himself, and appellants then drew out the rest. The following shows malice: "Trusting that your courage will return to you after the blackmailer D. D. Durham has been fully exposed and put to rout by those who are too patriotic to hide out and make excuses on the first fire of the enemy." 13 Am. and Eng. Encycl. of Law, 431, art. 4.

3. To write or publish anything that imputes insolvency or inability to pay one's debt, if without justification, is libellous per se, and the court so charged. 13 Am. and Eng. Encycl. of Law, 314, art. 3; 46 N. W. Rep., 143; Am. Digest, 1887, 778, sec. 1.

WILLIAMS, Associate Justice.—This was an action for damages for libel, commenced in the District Court by appellee against appellants. Appellant Hurst was the general manager of an organization called the "Texas Retail Merchants Protective Association," whose place of business was at Waco. The plan and purposes of the association will appear from the following circular, which was distributed with a view to securing subscribers and extending its membership:

"Protect yourself against those who buy and pay not. Potent reasons why you should join the Retail Merchants Protective Association of Texas :

"First. To get a book which has in it already the names of many thousand merchant breakers of Texas, and which is being supplemented every sixty days with as many more as fail to make satisfaction in a reasonable time for claims passing through the agency against them, and whose practice is to bleed you and others who can be duped by them.

"Second. To send your lost and questionable claims through the agency to be tested, which will either give you the money or their names to the book, that all who have the book may be put on notice and save their goods.

"Third. To collect and help others collect thousands of dollars by this system that never can be collected by law nor by a personal effort.

"Fourth. To make those who have helped to break nearly all the retailers that have gone before you go to work for a living and appreciate credit—when they get it—enough to pay for what they get; and to make the reckless buyer more cautious and pay more promptly, that you may be enabled to meet your bills promptly and sell for less profit.

" Fifth. To make those who are slipshod and those who betray confidence change their tactics, or steal, or leave the State to those who can be trusted for the necessaries of life.

" Sixth. To stop so many retailers from breaking, and help to make for yourself and Texas a sound credit system, which was lost by exemption, and which can not be regained except by a co-operative effort of all retailers.

" Seventh. Because this system is cheap and effectual, legitimate, and popular with those who have tried it and understand and take an interest in it; and because it has been organized and perfected in Waco, and has received the endorsement of the retailers and the recommendation of the wholesalers, having been tried and observed by them; and because it is a State institution, and the only one in the State; and because it is indispensable to the success of your business, and will cost you nothing at all if you carry out instructions.

" Eighth. Because if you are really a merchant, you know that something is necessary for the protection of the retail trade, and that any system depends for success on the patronage and co-operation of its advocates; and that if you wait for your neighbor to act first, no system can ever be a success; and it will finally be said that Texas retailers have not enough pluck and intelligence for self-preservation; and they will surely meet the fate of their predecessors in business.

" Ninth. Because when your neighbor joins and finds who are unworthy of credit, and cuts them off, they go to you and obtain credit, because you know not their standing, and thus they beat you as they did him.

" Tenth. You should join, because you know the reasons above given are good and true, and that your business interests will not admit of delay.

" Forward your application, and oblige

" A. L. C. HURST, Manager.

" Office 113½ South Fourth Street, Waco, Texas."

As indicated in this document, members of the organization were allowed to send claims to the manager for collection. Upon receipt of a claim, a circular letter (such as that set out below, addressed to appellee) would be sent to the debtor, and upon his failure to reply within the time specified, his name would be entered in a book called the " reference book," and notices were sent out periodically to all of the subscribers, containing lists of names added after the last publication of such book. The effect intended to be given to the recording of a name in the book and entering it upon the list can be gathered from the foregoing paper, as well as from those which follow.

Appellants Brown & Flewellen, a firm of merchants doing business at

Longview, Texas, became members of the association, and sent to it, to be dealt with in accordance with its established custom, a claim against appellee for $954.88, which grew out of the following facts:

Brown & Flewellen furnished to appellee, who was a tie contractor, supplies and money, and received from the railway company and credited upon his account moneys to which he was entitled in payment for ties furnished to it. These transactions ceased, but there had been no settlement, and no itemized account had been furnished to appellee showing the state of his account, though a statement had been presented to him showing the balance claimed by Brown & Flewellen.

There was evidence that appellee owed Brown & Flewellen a balance of a less amount than the claim placed in the hands of Hurst.

Appellee did not deny that he owed a balance, but claimed at the trial that he had not had an opportunity of ascertaining how the account stood before the alleged libel was published.

When Hurst, the manager, received the claim from Brown & Flewellen, he addressed to appellee the following communication.

[Exhibit A.]

" *Maxims.*—The honest consumer and the merchant are alike benefited by a sound credit system.

" Reputation for paying just debts is capital for all who are deprived of credit by exemption.

" Exemption robs the masses of legal credit and makes money hard to obtain, even at a high rate of interest.

" Exemption necessitates a system of protection to trade, because so many consumers claim under it and defy collections.

" WACO, TEXAS, February 3, 1891.

" *Mr. D. D. Durham:*

" DEAR SIR—Your account, amounting to $954.88, in favor of Brown & Flewellen of Longview, though long past due is still unsettled. This notification is sent you in order to give you an opportunity to call upon or write them and settle same. Should you not make satisfaction with me or your creditor within twenty days from date, I will record that fact in a book used by the members of this association as a protection against those who buy and refuse to settle on liberal terms. Your silence will be construed as a refusal to settle; and while you are not compelled to answer, dealers hold that all desirable customers will answer and make prompt settlement. The intention of this association is to give protection to retailers and professional men in credit transactions, which can be done only by separating those who betray confidence and show themselves unworthy of credit, by neglecting or refusing to settle honest debts on easy terms, from those who do answer and make prompt settlement. If you can't pay now, you can give note or other satisfaction until you

can pay.   If this claim is just, you will settle in some satisfactory way, or your failure to do so will be reported; should you afterwards settle, that fact will also be reported.   If you consider this claim unjust, make it known to me, and I will return it to the owner or have satisfaction made before asking payment.

" Justice will be done between debtor and creditor, and the right of each properly guarded.   All dealers feel the need of this protection to credit, because so many consumers escape debt paying under the provisions of the exemption law.   Dealers must protect themselves or fail in business.   We presume that you are honest and in favor of a settlement on terms suited to your circumstances, and reasonable enough not to become offended at this call, for the reasons above given.   It will not give this association nor your creditors any pleasure to report you as failing to make satisfaction for this claim, and the report will not be made until the time above named is out.   This association benefits all classes and is a hardship to none.   Honest customers only need one notice, and therefore you need not expect another.   For this claim you can remit by express or postoffice money order.

" Trusting you will call on or write them within the time above specified, I remain,

        " Yours respectfully,

                    "A. L. C. HURST, Manager."


Receiving no reply, he entered appellee's name in his book, and issued a list such as is above described to the members and subscribers of the association.   The issuance of such list is the foundation of this suit, and the other documents copied in this opinion were set up in the petition and offered in evidence to explain the list and show its meaning and purpose.

Appellee recovered verdict and judgment for $1000 actual damages against all of the defendants, and for $2000 exemplary damages against defendant Hurst, from which all of the defendants appeal.

Appellants' sixth assignment is as follows:   " Because the court erred in overruling defendant's general and special exceptions to plaintiff's original petition."

This is too general to present any question, except, perhaps, as to the sufficiency of the petition upon general demurrer.

The petition alleges the issuance and publication of the document above copied, and of the lists containing appellant's name, taken from the record book of the association, which are all attached as exhibits; avers that charges made therein were false, and were made maliciously by defendants for the purpose of injuring and defaming him.

The matter which is claimed to be libellous is not specified in the body of the petition with such precision as should have been employed, but in a general way it is alleged, that plaintiff was published as a dishonest man

who would not pay his debts, and reference is made to the exhibits, all of the statements and intimations in which are characterized as false and malicious.

The petition was good on general demurrer; and the rulings upon the special exceptions are not presented in a proper manner. We will remark, however, that the petition should specify by direct allegations in what particulars the language of the exhibits was libellous, and the right to a recovery, upon another trial, should be restricted to the matters thus put in issue. Bradstreet v. Gill, 72 Texas, 117. A mere reference to exhibits to supply the place of substantial allegations should not be indulged.

The fifth assignment of error complains of the striking out of a supplemental answer, the nature of which is not stated in the brief and need not be considered. The answer stricken out seems to have contained an itemized statement of appellee's account with Brown & Flewellen. The remaining answer set up that indebtedness sufficiently for the purposes of this case, and the evidence upon that subject was unrestricted.

There was no error in the admission in evidence of the list containing the name of appellee, and exhibit C, which is the first document copied in this opinion.

The publication of the list constituted the foundation of the action, and the circular tended to explain the effect and significance of the list. Bradstreet v. Gill, 72 Texas, 118.

The letter from Hurst to D. D. Pinkham was also properly admitted in evidence. Though it was written after this suit was brought, it contained expressions which tended to show the writer's animus towards the plaintiff, and was admissible for that purpose. Its purpose was properly explained to the jury by the charge, and they were allowed to consider it for no other purpose.

The objection made by plaintiff to the introduction by defendants of their book containing their system and rules of business is not stated in the bill of exceptions, and we can not consider the fourth assignment, which complains of the exclusion of the book from the evidence.

As the publication of the list was made to members of the association, any evidence which would tend, legitimately, to show how the entering of appellee's name upon it and the issuance of it would be understood by such members would be relevant. Whether the book was admissible or not will not be discussed, in the absence of information as to what objection was urged to it. What is said will be sufficient for another trial.

During the trial plaintiff was allowed to read the depositions of witnesses residing at Jefferson, who stated that they did not know plaintiff, but that his credit would have been injured by the publications in question, and that the effect and tendency thereof would be to damage the commercial standing of any man; that while they would have sold him goods previous to such publication, upon proper recommendation,

they would not have done so had they received notice of the circulars issued against him.

This was objected to as being the opinion of the witnesses. The point thus raised is decided in the case of Bradstreet v. Gill, above cited, wherein such evidence is held to be inadmissible. We need not do more than refer to that decision.

The only part of the charge complained of is the following clause: " To write or publish anything that imputes insolvency, inability to pay one's debts, the want of integrity in his business, or personal incapacity or pecuniary inability to conduct it with success, or which in any other measure are prejudicial to him in the way of his employment or trade, is libellous per se, if without justification."

Appellants say of this charge, that " in order to make matter libellous within itself, the publication of the same must not only be defamatory but false; and, if the matter alleged is privileged, in order to sustain an action for the same, malice must be shown to exist."

The objections here made to the charge seem to be, first, that it omits to tell the jury that the published matter must be false; and second, that in case of privileged matter actual malice must be shown in order to make it actionable. The whole law of a subject like this can not be embraced in one sentence of a charge. Other parts of the charge informed the jury that the statement, to entitle plaintiff to recover, must have been false.

A privileged communication would be excluded from the definition of libel given in the charge by the expression " without justification;" for the effect of a privileged occasion for the publication is to justify it, if it be made without actual malice. No special charge was asked explaining more fully the law on the subject.

It it is difficult to perceive, however, how any privilege which the law would allow to the defendants in their communications with each other could be made available here. Brown & Flewellen had the right to place their claim in the hands of Hurst for collection, and to authorize him to take any lawful steps and do all lawful acts for the purpose of collecting it. And each being interested in receiving all information which the occasion made necessary or proper, the other had the right to communicate it; and any such communication would be protected by the law and privileged, though false, if not made with actual malice. But neither of them was privileged to publish to others false and defamatory statements concerning plaintiff; nor did either have the privilege of denouncing him to the other as a " merchant breaker," as one " whose practice it is to bleed those who can be duped by them"— in short, as a dishonest man, unworthy of credit or confidence, if such was the meaning of the publications issued concerning him. Of course, if such statements were true, there would be no cause of action; but if the effect of the list issued was

to insinuate concerning plaintiff such charges as claimed by him, and if they were false, there is no privilege which would shield them from a recovery for the damage thereby occasioned. While, as before stated, they had the privilege, on account of their relations, to communicate all proper information growing out of them, they could not make use of the occasion to utter or publish defamatory matter not relevant thereto. The privilege would not extend further than the occasion required. The assignment points out no error in the charge.

Because, however, of the admission of improper testimony, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered May 4, 1893.