HENDERSON v. CREDIT CLEARING HOUSE et al. (No. 1954.)

(Court of Civil Appeals of Texas. Texarkana. April 16, 1918. Rehearing Denied May 2, 1918.)

1. LIBEL AND SLANDER ⟜85, 86(2)—LIBEL—PLEADING.

In an action against credit company for libel for placing plaintiff's name in a list of debtors, it was necessary to set out the words in the list which were regarded as libelous, with such innuendoes as were necessary to show they were so.

2. LIBEL AND SLANDER ⟜101(3) — LIBEL — PUBLICATION.

In action against credit company for libel in placing plaintiff's name in a list of debtors, it was necessary to prove the publication of words in the list regarded as libelous.

Appeal from District Court, Henderson County; John S. Prince, Judge.

Action by Elam Henderson against the Credit Clearing House and another. Judgment for defendants, and plaintiff appeals. Affirmed.

This was a suit by appellant against appellees (the Credit Clearing House and the Magnolia Petroleum Company) for damages for libel, in which judgment was rendered for appellees.

According to allegations in his petition, the libelous matter of which appellant complained consisted of a charge that he "was indebted to the Magnolia Petroleum Company the sum of $3; that he had not paid the same; that it was past due." The particular language used in making the charge was not set out in the petition, nor was it proven at the trial; appellant contenting himself with testimony showing that the Credit Clearing House included the Magnolia Petroleum Company's account against him in a list of accounts held by it for collection December 29, 1914. It was alleged that publication of the libel was made by the Credit Clearing House by sending copies of the list to its members. It was further alleged that the Magnolia Petroleum Company conspired and acted with the clearing house in making the publication; and it was on that ground that appellant sought a recovery against the petroleum company.

It appears from the record that in May, 1914, appellant purchased $3 worth of gasoline of the agent of the petroleum company in Athens. In August or September, 1914, the petroleum company wrote appellant requesting him to remit the amount of the purchase. Appellant replied that he had paid same to the petroleum company's said agent. The agent insisting that payment had not been made to him, the petroleum company on December 23, 1914, placed its account against appellant with the clearing house for collection. The clearing house at once sent appellant one of its form letters, in which a hope was expressed that he would promptly honor the draft it had made on him for the amount of the account, and in which he was advised that the clearing house was an organization composed of manufacturers and wholesalers; that twice each year, and oftener if requested, it compiled reports "showing the exact condition of the merchant's account on the ledger of each interested member"; that, while it issued nothing but bare ledger facts, such facts of necessity showed in what manner the merchant was meeting his obligations; that the failure of a debtor to honor a draft for a past-due claim, unless properly explained, was apt to be considered evidence of financial weakness; and that it was a well-known fact that no good business house would knowingly extend credit to concerns "of doubtful record and uncertain promptness." After expressing a desire, while acting for the petroleum company in the matter, to be just to appellant, and requesting him to so advise it if the claim was not correct, the clearing house concluded the letter with a warning that the claim would be passed to an attorney for collection if appellant should fail to honor the draft or give a satisfactory reason for not doing so. Regarding the letter as offensive, appellant did not reply to it. The account against appellant was included in a report made by the clearing house December 29, 1914, of accounts held by it for collection. The amount of the account was paid to the petroleum company by its agent in Athens January 6, 1915, and it immediately notified the clearing house of the fact. The latter mentioned the account as paid in a report made by it January 12, 1915. The payment to the petroleum company by its Athens agent on January 6, 1915, was explained by testimony of appellant. He said:

"That the petroleum company's agent "always insisted," quoting, "the bill had not been paid,

---

and that it was just and owing. I went over his books and accounts with him, and his books did not show the bill in question to have been paid. He afterwards said he would remit his own money to the Magnolia Petroleum Company rather than have a squabble with me over $3 or to lose my friendship over that amount, and after that no further demand for payment was made by the Magnolia Petroleum Company, though prior to that time the Magnolia Petroleum Company sent me bills for this item from its Dallas office every month, until a letter came from the Credit Clearing House."

The judgment was based on a verdict in accordance with a peremptory instruction to the jury to find in favor of appellees.

Richardson & Watkins, of Athens, for appellant. W. H. Francis and Geo. C. Greer, both of Dallas, W. B. Paddock, of Ft. Worth, and Faulk & Faulk, of Athens, for appellees.

WILLSON, C. J. (after stating the facts as above). We think the trial court did not err when he instructed the jury to find for appellees.

[1, 2] The list charged to have contained the libelous matter was not adduced in evidence, nor were the contents thereof proven in any way. All that was shown with reference to it was that it was one of accounts placed in the hands of the Credit Clearing House for collection, and that among those accounts was one against appellant for $3 in favor of the Magnolia Petroleum Company. It devolved upon appellant to set out in his petition the words in the list which he regarded as libelous, with such innuendoes as were necessary to show they were so, and at the trial to prove the publication of the words. The Bradstreet Co. v. Gill, 72 Tex. 115, 9 S. W. 753, 2 L. R. A. 405, 13 Am. St. Rep. 768; Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 883; Brown v. Durham, 3 Tex. Civ. App. 244, 22 S. W. 870; 17 R. C. L. 390; 13 Enc. P. & P. 45; 25 Cyc. 447; Green on Ev. p. 387; Book Co. v. Pub. Co., 71 Minn. 363, 73 N. W. 1089; Kirby v. Martindale, 19 S. D. 394, 103 N. W. 648, 9 Ann. Cas. 493; Webster v. Holmes, 62 N. J. Law, 55, 40 Atl. 778; Battersby v. Collier, 34 App. Div. 347, 54 N. Y. Supp. 363. He did neither. In the Gill Case, cited above, the court said:

"A libel suit is based on language or its equivalent. The complaint should put the court in possession of the libelous matter published, the language used, with such innuendoes as are necessary to explain what was meant by the language, so as to enable the court to determine whether the words are actionable. In this case the complaint attempts to give the meaning of the words or libel only, without stating what the libel was. If the libel consisted in reporting plaintiff's standing as a merchant 'in blank,' the complaint should have informed the court and the defendant of the fact, with such explanations as to what was meant by the report as were necessary to show that the report was injurious and defamatory. This is not a case where the pleader must from the nature of the publication resort to a verbal description of the slanderous matter, as it would be when movements, pos-

tures, or pictures are used. Plaintiff could have stated his cause of action as it was in clear terms. He has not done so. It is not sufficient in this kind of a suit to state the substance of the language used or its meaning. We believe the general demurrer ought to have been sustained."

The judgment is affirmed.