BATEN v. HOUSTON OIL CO. OF TEXAS et al. (No. 507.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 18, 1919. Rehearing Denied Jan. 7, 1920.)

1. LIBEL AND SLANDER ⊕⟼15—WORDS CHARGING OBSTRUCTION OF JUSTICE LIBELOUS.

Written language charging plaintiff with destroying valuable testimony, with conspiring to defeat the jurisdiction of courts to which he had submitted his litigation, and with trying to appropriate to himself valuable property in such a way as to avoid responsibility, held libelous under Rev. St. 1911, art. 5595.

2. LIBEL AND SLANDER ⊕⟼38(1)—WORDS USED IN JUDICIAL PROCEEDING PRIVILEGED.

Words spoken, written, or printed in the course of a judicial proceeding are privileged when material, relevant, and pertinent to the issues involved in the case.

3. LIBEL AND SLANDER ⊕⟼38(2) — ALLEGATIONS IN MOTION FOR CONTEMPT PRIVILEGED.

Allegations, in motion for contempt, that plaintiff had disobeyed the supersedeas granted by the trial court, in having willfully destroyed certain house on the premises involved in the action, which, was valuable evidence, and in cutting and removing a great amount of timber from premises, held privileged, being pertinent, material, and relevant to the charge of contempt.

4. LIBEL AND SLANDER ⊕⟼38(2)—MOTION FOR CONTEMPT ABSOLUTELY PRIVILEGED.

Allegations in motion for contempt held absolutely privileged.

5. LIBEL AND SLANDER ⊕⟼38(1)—CIVIL COURT PROCEEDINGS ABSOLUTELY PRIVILEGED.

Proceedings in civil courts are absolutely privileged.

6. LIBEL AND SLANDER ⊕⟼38(3)—LIMITATIONS ON PRIVILEGE OF PUBLISHING ACCOUNT OF JUDICIAL PROCEEDINGS STATED.

The privilege of publishing an impartial account of judicial proceedings under Rev. St. 1911, art. 5595, does not justify the publication of a libelous written pleading properly filed upon which no action has been taken by the court, and is limited to proceedings while the court is in session and may have an opportunity to prohibit· publication.

7. MALICIOUS PROSECUTION ⊕⟼12 — MOTION FOR CONTEMPT NOT BASIS FOR SUIT.

The making of a motion for contempt cannot be the basis for a suit for malicious prose-

---

cution, in absence of a showing of arrest; an arrest being an essential element of such cause of action.

Appeal from District Court, Hardin County; J. L. Manry, Judge.

Suit by Thomas J. Baten against the Houston Oil Company of Texas and others. From judgment sustaining general demurrer to petition, plaintiff appeals. Reversed and remanded, with directions.

Crook, Lord, Lawhon & Ney and Smith & Crawford, all of Beaumont, for appellant.

W. E. Orgain, of Beaumont, and McDonald, Meachum, McMeans, Garrison & Pollard, and Kennerly, Williams, Lee & Hill, all of Houston, for appellees.

WALKER, J. This is a suit by the appellant, as plaintiff in the court below, against the appellees as defendants, for damages; plaintiff's petition containing three counts, viz.:

(1) For libeling the plaintiff through the publication of a libelous document and filing the same in the Supreme Court of the United States.

(2) For libeling the plaintiff by the publication and circulation of the libelous document and dissemination of its contents to various parties in sundry places, both before and after the filing of same in the Supreme Court of the United States.

(3) For malicious prosecution by defendants, without probable cause, of a motion seeking and having for its object the punishment of plaintiff by proceedings before the Supreme Court of the United States as for criminal contempt.

The court below sustained a general demurrer to all three counts, and from this judgment sustaining the general demurrer appellant has brought this case to this court. In 1911, Cornelia G. Goodrich and others, this appellant being one of their attorneys, filed suit against the Houston Oil Company of Texas et al. in the District Court of the United States for the Eastern District of Texas, for the title and possession of 2,578 acres of land in the Chas. A. Felder league of land in Hardin county, Tex. On the trial of this cause the plaintiffs recovered the land; the defendants appealed to the Circuit Court of Appeals at New Orleans, which court reversed the case and sent it back for a new trial. Houston Oil Co. of Texas v. Goodrich, 213 Fed. 136, 129 C. C. A. 488.

On the second trial, the plaintiffs again recovered the land, again defendants appealed to the Circuit Court of Appeals, and on this second appeal a writ of supersedeas was granted by the trial court. On this appeal the Circuit Court of Appeals affirmed the judgment of the trial court. The Supreme Court of the United States granted a writ of certiorari to the Circuit Court of Appeals (241 U. S. 657, 36 Sup. Ct. 286, 60 L. Ed. 1225), and thereupon the cause was removed to the Supreme Court for review. At the time of the institution of the suit, the Houston Oil Company was in possession of the land. Pending the first appeal, no supersedeas having been granted, the plaintiffs, by due process of law, were placed in possession of the land. When the case was reversed, the Houston Oil Company filed petition asking restitution of the premises, which was denied by the trial court. This request was renewed in the Circuit Court of Appeals on the second appeal, which also denied the request. While this land was in litigation, the plaintiffs and their attorneys sold the timber on this land to the Village Mills Company, which proceeded to cut and remove practically all the timber from the land, amounting to something like 12,000,000 feet. There was also on this land a little house that figured prominently in the trial of the case, known as the W. T. Carroll house. In some way, pending the litigation, this house was removed from the premises. While the case was pending in the Supreme Court of the United States, the appellees herein, being the defendants in the above-described suit and their attorneys, filed a motion for contempt against the plaintiffs and their attorneys; the appellant here, Thomas J. Baten, being one of the attorneys for plaintiffs.

This suit for libel is based on this motion for contempt and the conduct of the appellees and their attorneys in circulating the same. Appellant has made this motion and all proceedings thereon a part of his petition, which petition is very lengthy, covering 75 pages of the transcript. He specially pleads various portions of this motion, but even these excerpts are too long to be copied in this opinion. However, we will give the following quotation:

"Respondents conspiring among themselves to cut, remove, and appropriate said pine timber and to escape liability therefor, organized a corporation known as the Village Mills Company. * * * During 1913 and 1914 respondents, acting through the Village Mills Company, cut, removed, and appropriated the timber from approximately 900 acres of the land in suit * * * aggregating 4,713,464 feet of pine timber; that affiant believes and so charges that soon after the rendition of the judgment, * * * and about the time of the suing out by petitioners of their writ of error from said judgment, * * * said parties respondent and said attorneys respondent, some or all, conceived and formed the purpose, design, and scheme and each with the others agreed and conspired to enter on said tract of land and into the improvements thereon and take and remove such yellow pine timber and appropriate same to their own use and benefit under conditions aptly calculated to enable them to escape liability therefor, regardless of whether said parties recovered title and possession of said tract of land * * * or did not so recover, and with the purpose and

design also to have, take, and appropriate said timber, so that when final judgment in this cause was entered the most valuable portion of said tract of land would have been appropriated by them; * * * that affiant believes and so charges that in carrying out said design, scheme, and conspiracy, and with the purpose to avoid and escape personal financial liability therefor, and to cover up and conceal said design, scheme, and conspiracy, * * * said parties respondent and attorneys * * * on the 19th day of July, 1913, organized and caused to be created, incorporated, and chartered under the laws of the state of Texas said Village Mills Company; * * * that affiant believes and so charges that in the organization of said corporation the said parties respondent * * * and said Village Mills Company acting together and each acting for the others, and in furtherance of and in carrying out said design, scheme, and conspiracy, * * * began cutting and removing and appropriating to their own use and benefit the said timber thereon; * * * that since originally beginning such corporations respondents have so cut, removed, and appropriated approximately 12,811,459 feet of pine timber therefrom, * * * all of which was done and is being done in carrying out the design, scheme, and conspiracy aforesaid, appropriating the valuable portion of said tract of land to their own use and benefit, and so destroying the corpus of the property that the final judgment of this court will avail only as to a minor portion thereof from the standpoint of value, and with the purpose of interfering with and defeating the jurisdiction of said District Court, the said Circuit Court of Appeals, and of this court over said property, * * * to show cause why they and each of them should not be adjudged in contempt of this court and punished therefor for violating the order of supersedeas herein and destroying almost wholly the subject-matter of litigation, by cutting, removing, and appropriating the pine timber * * * and willfully destroying a part of the improvements thereon, which improvements were valuable evidence on behalf of petitioners. The house known as the W. T. Carroll house, * * * which was perhaps the most * * * valuable piece of evidence offered on the trial to sustain petitioners' title, has been burned by respondents since the granting and service of said supersedeas, in violation thereof."

Appellant, by proper innuendoes, shows the relation of these allegations to himself, pleads his damages, and states fully the relief sought by him.

The first question raised on this appeal is: Is this language libelous? "Libel" is defined by article 5595, R. S. 1911, as follows:

"Libel is a defamation expressed in printing or writing, * * * tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue, or reputation of any one, * * * and thereby expose such person to public hatred, ridicule or financial injury."

[1] It seems to us that the language above quoted comes clearly within this statute.

Appellant is charged with destroying valuable testimony. He is charged with conspiring to defeat the jurisdiction of the courts to which he had submitted his litigation. He is charged with trying to appropriate to himself valuable property, claimed by the relators, in such a way as to avoid financial responsibility. He is charged with conspiring with others to effect these ends. Construing this statute in Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167, the Supreme Court in an opinion by Judge Dibrell, says:

"By the terms of the present law, a libelous publication, contrary to the common-law rule, becomes actionable without the proof of malice, whether it is or not libelous per se. Under the present law, it is not necessary to the right to maintain an action for a publication not libelous per se to allege or prove special damages. * * * In this particular the common-law rule has been modified."

This language is libelous per se under the rule announced by the Supreme Court in Belo v. Fuller, 84 Tex. 453, 19 S. W. 616, 31 Am. St. Rep. 75:

"Words which impute that the plaintiff has been guilty of a crime punishable with imprisonment are actionable per se. It is not necessary that the words to be actionable per se should make the charge in express terms. They are actionable if they consist of a statement of facts which would naturally and presumably be understood * * * as a charge of crime."

To the same effect, see Cobb v. Garlington, 193 S. W. 467; Belo v. Smith, 40 S. W. 856; Young v. Sheppard, 40 S. W. 62; Boone v. Herald News Co., 27 Tex. Civ. App. 546, 66 S. W. 313; Ellis v. Garrison, 174 S. W. 962; Guisti v. Galveston Tribune, supra; 25 Cyc. 357.

Appellant's fourth proposition is:

"Words imputing to another disgraceful, dishonorable acts not amounting to a crime are actionable per se."

We think the authorities sustain this proposition. Sanders v. Hall, 22 Tex. Civ. App. 282, 55 S. W. 594; Holt v. Parsons, 23 Tex. 9, 76 Am. Dec. 49; Brown v. Durham, 3 Tex. Civ. App. 244, 22 S. W. 868; Fleming v. Mattinson, 52 Tex. Civ. App. 476, 114 S. W. 650; Wallis v. Walker, 73 Tex. 8, 11 S. W. 123; Walker v. Publishing Co., 30 Tex. Civ. App. 165, 70 S. W. 558.

Having determined that the language complained of is libelous, was its publication and filing in the Supreme Court of the United States privileged?

[2, 3] We understand the rule to be, sustained practically by an unbroken line of authorities, that words spoken, written, or printed in the course of a judicial proceeding are privileged when material, relevant, and pertinent to the issues involved in the case. In his fifth proposition, appellant con-

cedes this to be the correct rule, but asserts that the allegations which he charged to be libelous are in no wise material, relevant, or pertinent to any issue involved in said motion. We cannot agree with this analysis of the facts. Appellees alleged that appellant had disobeyed the supersedeas granted by the trial court. They alleged that this offense consisted, among other things, of willfully destroying the W. T. Carroll house, which was valuable evidence; of cutting and removing 12,000,000 feet of timber from the premises; that this had been done in such way as to avoid personal responsibility; that appellant had conspired with the other respondents to effect these nefarious ends. These allegations were all pertinent, material, and relevant to the charge of contempt. In trying this issue the Supreme Court was not only interested in finding out what had been done by appellant, but, in order to inflict a punishment commensurate with the offense, it was pertinent, relevant, and material to inquire into the motives actuating appellant in the commission of the offense.

[4] But if we are wrong in our conclusion that these facts are relevant, pertinent, and material to the issue presented to the Supreme Court by this motion, yet we are still of the opinion that its publication is absolutely privileged. The Supreme Court, in Runge v. Franklin, 72 Tex. 585, 10 S. W. 721, 3 L. R. A. 417, 13 Am. St. Rep. 833, in an opinion by Judge Collard, adopts the rule announced by Townsend on Slander and Libel, § 221, as the correct expression of the law on this issue. Mr. Townsend says:

"The right of appealing to the civil tribunals is more extensive than the right of appealing to the criminal tribunals, for as to the former, every one has the right, with or without reasonable cause for so doing, to perfect his complaint, and whatever he may allege in his pleading as or in connection with his ground of complaint can never give a right of action for slander or libel. The rule as thus laid down has been doubted by some, and it has been said that if the tribunal to which the complaint be made has no jurisdiction of the subject matter, or if the defamatory matter be irrelevant to the matter at hand, or if the party complaining or defending maliciously insert defamatory matter in his pleading, that in such cases the party aggrieved may maintain his action for slander or libel. Notwithstanding the dicta to the contrary, we believe the better and the prevailing rule to be that for any defamatory matter contained in a pleading in a court of civil jurisdiction, no action for libel can be maintained. The power possessed by the courts to strike out scandalous matter from proceedings before them and to punish as for contempt is considered a sufficient guaranty against the abuse of the privilege; but whatever may be the reason it seems certain that where there is a perversion of the privilege the policy of the law steps in and controls the individual right of redress."

Judge Collard, discussing this quotation from Mr. Townsend, says:

"We adopt the foregoing as expressing our views upon the question. We believe it is and ought to be the law that proceedings in civil courts are absolutely privileged. Citizens ought to have the unqualified right to appeal to the civil courts for redress without the fear of being called to answer in damages for libel."

In discussing Runge v. Franklin, appellant asserts the rule as announced by Judge Collard is dictum, and should not control the disposition of this case. It is true that Judge Collard said of the facts, "It does not appear to us that the allegations declared on as libelous were irrelevant, or impertinent, or foreign to the end in view," but his reasoning in the case is not limited by this finding.

[5] After a careful review of many authorities, the rule as above stated was deliberately adopted by him. We believe it is the correct expression of the law of libel, as affecting judicial proceedings, and have no disposition to modify or limit in any way the rule as thus announced.

Appellant insists that, if we approve this rule, the pleader on a promissory note can close his pleading with an allegation that the defendant is a thief, or perjurer, and be privileged in so doing. That is not our construction of the rule which we have approved, nor do we believe such construction to have been in the mind of the Supreme Court when it adopted the opinion of Judge Collard. The limitation, "whatever he may allege in his pleading as or in connection with his ground of complaint," is a sufficient protection against the abuse which appellant foresees. Hence the trial court did not err in sustaining a general demurrer against the first count in appellant's petition.

In his second count, plaintiff alleges:

"That before said motion was filed in the Supreme Court of the United States, the defendant circulated and published the same in the counties of Harris, Hardin, Jefferson, and other counties in the state of Texas, and the plaintiff likewise alleges that the defendant likewise published and circulated the same in said counties after said motion was filed in the Supreme Court of the United States, and that the defendants did thereby write, print, publish, and circulate in said counties and in other counties in the state of Texas, both before and after the filing of said motion in the Supreme Court of the United States, the following defamatory matter: [Setting out the same matters complained of in the first count.]

"Plaintiff alleges in connection with the foregoing that, both before and after the motion in question was filed in the Supreme Court of the United States, defendants published and circulated the said libelous and defamatory matters aforesaid as therein contained and caused and permitted the same to be published and circulated; that the defendants caused and permitted the same to be read by third parties; that they communicated the contents of same to third parties; that they exhibited the same to third parties; that they caused and permitted the contents of said motion and certain parts there-

of to be made known to many persons in the state of Texas and elsewhere; that they caused and allowed the contents of said motion to be widely known to the public, so that the same became the subject of much comment and discussion among the public; that the defendants exhibited said motion and said defamatory parts thereof and the libelous matters therein contained as aforesaid, either before or after said motion was filed, or read the same to or communicated the same to H. P. Weir in Harris county, Tex., Clarence Carter in Harris county, Tex., Gordon Russell, Judge of the District Court of the United States for the Eastern District of Texas, to Ralph Burham, M. S. Duffie, John Brooks, B. F. Quicksall, and Mr. Donziger, and various other parties whose names are to the plaintiff unknown, in Jefferson county, Tex. [continuing this allegation with the names of many other parties]; that the plaintiff is unable to give the names of all the parties to whom defendants exhibited said motion and the said parts thereof, and the defamatory matters therein contained or the names of the parties to whom they have read or otherwise communicated the same, and it is not intended, by the allegation herein as to the circulation among the parties named, to charge that the circulations had no wider range; * * * and he alleges that all such circulations and publication were made willfully and maliciously and with intent to injure the plaintiff, and that such publication and circulation were wholly unnecessary to the filing of said motion or the prosecution of the same in the Supreme Court of the United States and have no legitimate connection therewith."

Under these allegations appellant announces the following proposition of law:

"The method of publication or circulation of a document otherwise privileged may deprive such document of its privileged character and transform it into a libel. Publicity, unnecessary and uncalled for, may destroy a privilege and lay the publisher open to an action for libel; and so the publication of a paper, filed or to be filed in a court, by its circulation and dissemination to the public outside of the court, deprives the publisher of his privilege and transforms it into a libel, for which an action would lie."

In Koehler v. Du Bose, 200 S. W. 238, 245, the court says:

"The method of communication may strip a privilege of its character and transform it into a libel. Publicity, unnecessary and uncalled for by the circumstances, may destroy a privilege and lay the publisher open to an action for libel. Thus in an English case it was held that a speech made by a member of Parliament was absolutely privileged, but if the speech was printed and circulated it would be libelous."

In Houston Chronicle Publishing Co. v. McDavid, 173 S. W. 467, in giving the nature of the cause of action, Chief Justice Key said:

"The case is a libel suit, founded upon the publication of an answer filed in a divorce suit."

The sixth syllabus correctly states the rule announced by the court, as follows:

"Rev. St. 1911, art. 5597, declaring a fair, true, and impartial account of proceedings in a court of justice, unless the court prohibits its publication, or any other official proceeding authorized by law, in the administration of the law, privileged, does not justify the publication of a libelous written pleading, properly filed, upon which no action by the court, judge, or any other officer has been taken in reference to the matter referred to therein; but the privilege is limited to proceedings while the court is in session and may have an opportunity to prohibit publication," etc.

Discussing this rule, Newell on Slander and Libel, § 554, says:

"There is no rule of law which authorizes any but the parties interested to handle the files or publish the contents of their matters in litigation. The parties, and none but the parties, control them. One of the reasons why parties are privileged from suit for accusations made in their pleadings is that the pleadings are addressed to courts where the facts can be fairly tried, and to no other readers. If pleadings and other documents can be published to the world by any one who gets access to them, no more effectual way of doing mischief with impunity can be devised than filing papers containing false and scurrilous charges, and getting them printed as news. The public have no rights to any information on private suits till they come for public hearing or action in open court; and when any publication is made involving such matter they possess no privilege, and the publication must rest on either nonlibelous character or truth to defend it. A suit thus brought with scandalous accusations may be discontinued without any attempt to try it, or on trial the case may easily fail of proof or probability. The law has never authorized any such mischief. It has been uniformly held that the public press occupies no better ground than private persons publishing the same libelous matter, and, so far as actual circulation is concerned, there can be no question which is more likely to spread them."

The same authority, in section 510, says:

"Petitions and memorials presented to the Legislature relative to proceedings to which they are pertinent are absolutely privileged. So is a petition to a committee of either house. But a publication of such a petition to others, not members of the house, is of course not privileged." Park v. Detroit Free Press, 72 Mich. 560, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544; Cowley v. Pulsifer, 137 Mass. 392, 50 Am. Rep. 318.

We take the following announcement of the rule from a citation in the last-cited case:

"If one exhibit a scandalous bill, if the court hath jurisdiction of such matters, an action lies not; otherwise it is, if the court have not jurisdiction; or having it, if the party publish his bill abroad, the said bill being false."

See, also, 25 Cyc. 407.

[6] The special exceptions to the second count in plaintiff's petition were properly

sustained. However, the court erred in sustaining a general demurrer to this count, and we approve appellant's sixth proposition, as above stated, as a correct statement of the law.

The third count in appellant's petition is:

"For the malicious prosecution by defendants without probable cause of a motion seeking and having for its object the punishment of the plaintiff by proceedings before the Supreme Court of the United States as for criminal contempt."

[7] We shall not set out plaintiff's allegations under this count. On authority of Usher v. Skidmore, 28 Tex. 621, we do not believe that this character of proceeding can be the basis for a suit for malicious prosecution. Under the Texas statutes, no attachment can issue for the body of the contemner in constructive contempt until a hearing has been had on the motion. At least, no arrest is shown in this case. An "arrest" is an essential element of this cause of action. As said by the Supreme Court in Usher v. Skidmore, supra:

"The affidavit that was in part misdescribed in the original petition did not constitute the plaintiffs' cause of action, for if that had been all that was done by the defendants, and the prosecution had gone no further, there would have been no cause of action for a malicious prosecution. The cause of action consisted in the injury she sustained by the arrest and confinement in custody under the charge of felony."

This case has been cited with approval by our courts, and we do not find any instance where it has been modified or criticized.

A general demurrer was properly sustained to this count in plaintiff's petition.

For the error of the court above discussed, this cause is reversed and remanded for a new trial on the second count in plaintiff's petition.