## THE BRADSTREET CO. v. ROBERT GILL.

No. 5991.

1.   **Non-Resident Corporation—Agent.**—In a suit against a foreign corporation service was had on an alleged agent of the defendant residing in the county.   The defendant pleaded in abatement that it had no agent in the county, denying that the alleged agent was one in fact.   There being conflicting testimony; *held,* (1) error to withdraw the fact of agency from the jury; and (2) agency or not is a question of law to be determined by the relations of the parties as they in fact exist under their agreements and acts.

2.   **Statute Construed—Venue in Suits Against Corporations.**—Under Act of March 31, 1885, suit may be brought against foreign, private, or public corporations in any county where such corporation may have an agency or representation, and without showing that its principal office is in such county.

3.   **Punctuation.**—Errors in punctuation in a statute will be disregarded when the meaning is obvious.

4.   **Libel—Pleadings.**—The petition in a libel suit should put the court in possession of the libelous matter published, the language used, with such innuendoes as are necessary to explain what was meant by the language and to whom it applied.

5.   **Same.**—In alleged libel by reporting a merchant's standing "in blank" the complaint should have stated the fact, with such explantions as to what was meant by the report as were neceesary to show that the report was injurious.

6.   **Commercial Agency—Key to Reports.**—In an action involving the meaning of a report by a commercial agency it is competent to call an expert to explain the meaning of the terms and characters used.

7.   **Opinion as to Effect of Report.**—The jury should determine the effect; the witness could only give his opinion, on which the jury would be as competent to judge as the witness.   Such testimony is inadmissible.

8.   **Privileged Communications.**—The publications of commercial agencies, issued to their subscribers generally, are not privileged.   They are only so when made in confidence to a subscriber who is interested in the pecuniary standing of the merchant reported.

9.   **Commercial Agencies** are lawful, and when conducted lawfully are beneficial, but they are not exempt from liability for false and defamatory publications.

10.   **Privileged Communications,** if false and made with malice in fact, that is if express malice be shown or such gross disregard of the rights of the injured party as will be equivalent, are actionable.

11.   **Communications not Privileged,** if false, may be presumed to be of malice from their falsehood.

APPEAL from Bastrop.   Tried below before Hon. H. Teichmueller.

The facts sufficiently appear in the opinion.

*Labatt & Noble* and *Fowler & Maynard,* for appellant, cited Robertson v. Ephraim, 18 Texas, 122; Gildart v. Grumbles, 22 Texas, 16; Walker v. Walker, 22 Texas, 333; Gen. Laws 1885, 79; Kingsbury v. Bradstreet, 42 N. Y. Sup. Ct., 212; Woodruff v. Bradstreet, 42 N. Y., 16; Newbold & Sons v. Bradstreet, 57 Md., 38; West. U. Tel. Co. v. Brown, 62 Texas, 540; R. R. Co. v. Le Gierse, 51 Texas, 203; Willis v. McNeill, 57 Texas, 478; Holt v. Parsons, 23 Texas, 9; The Eaton, Cole & Burnham Co. v. Avery, 83 N. Y., 31; Ormsby v. Douglass, 37 N. Y, 477; Trussell v. Scarlett, 18 Fed. Rep., 214; Erber v. Dun, 12 Fed. Rep., 526; Locke v. Bradstreet Co., U. S. C. Ct. of Minnesota, The Reporter, vol. 19, 326; Kent v. Bongartz, The Reporter, vol. 20, p. 570, Sup. Ct. R. I., June, 1885; Townsend on Slan., secs. 146, 148–188; vol. 2, Green. Ev., 254, 256, and 420; Sedg. on Dam., 6th ed., 674.

COLLARD, JUDGE.—The appellant, the Bradstreet Company, being a foreign corporation, was sued in Bastrop County of this State for damages for an alleged libel upon plaintiff, Robert Gill, a merchant in the town of Bastrop. . The business of the Bradstreet Company is that of a commercial agency. It is a foreign corporation and does business in the United States and in Texas. It is alleged in the petition that the company is a foreign corporation and that John M. Finney is its local agent in Bastrop County. Defendant denied that it had any agent in the county and pleaded in abatement to the jurisdiction of the court. The court instructed the jury "that the evidence shows that defendant has an agent in Bastrop County, and that the court has jurisdiction of the case." It is insisted that this charge is error because there was evidence tending to show that defendant had no agent in the county and that the charge was upon the weight of evidence. We think it was error to so charge the jury. The court should have instructed the jury that if Finney was employed or engaged by the company as its correspondent at the time the suit was brought to furnish it with information as to the commercial standing of merchants and business men in Bastrop County, to be used by the company in its reports to its customers and subscribers in conducting the business of the company, then he would be its agent, and he being a resident of the county the court had jurisdiction of the case.

The letters of the company to Finney, coupled with the testimony that he made reports to it of the status of merchants in Bastrop, would support a finding that he was such agent; but there was other evidence which the jury might have considered, and from which they may have concluded that he was not engaged by defendant as its agent at the time the suit was brought. The question of agency or not should have been left to the jury. It would have been error to instruct the jury, as re-

quested by defendant, that Finney was not its agent; it was error to instruct them that he was such agent.

The court refused a charge asked by defendant to the effect that if it was not the intention of defendant to make Finney its agent, and if it was not the intention of Finney to become its agent, to find for defendant on the plea in abatement. The refusal to give the charge is assigned as error. The intention of the parties, it is true, must control; but that intention is to be gathered from what was actually done or agreed by the parties, not from what they may have privately meant or supposed they meant. Agency or not is a question of law to be determined by the relations of the parties as they in fact exist under their agreements or acts. If relations exist which will constitute an agency it will be an agency whether the parties understood it to be or not. Their private intention will not affect it. It was not error to refuse the charge.

The court overruled defendant's general demurrer to the petition. This ruling is assigned as error, because the petition does not set forth with sufficient certainty the alleged false reports; because it does not set forth with sufficient certainty the actual damages sustained by plaintiff; because it does not show whether plaintiff's suit is for libel or slander, and it does not show whether the suit is for actual or exemplary damages, nor how much is claimed as actual and how much as exemplary damages; and because "it fails to show that the defendant has an agency or representation *and principal office in* Bastrop County. The petition does not set out *in hæc verba* the very language of the libel, but pretends to give its substance and meaning."

Our rules of pleading require that the petition shall set forth "a full and clear statement of the cause of action, and such other allegations pertinent to the cause as the plaintiff may deem necessary to sustain his suit," etc. It has been many times decided by our courts that the common law distinctions as to pleading and its technicalities do not prevail with us, but that a clear and logical statement of the cause of action is all that is necessary. A clear statement of the facts constituting the *cause of action* can not, however, be dispensed with. The character of the suit must be the guide to the pleader, and enough must be stated to constitute a cause of action. In a suit on a note it will be sufficient to state the substance and legal effect of the note; not so in a suit for libel. A libel suit is based on language or its equivalent.

The complaint in a libel suit should put the court in possession of the libelous matter published, the language used, with such innuendoes as are necessary to explain what was meant by the language, and to whom it applied, so as to enable the court to determine whether the words are actionable. In this case the complaint attempts to give the meaning of the words or libel only, without stating what the libel was. If the libel consisted in reporting plaintiff's standing as a merchant "in blank," the complaint

should have informed the court and the defendant of the fact, with such explanations as to what was meant by the report as were necessary to show that the report was injurious and defamatory. This is not a case where the pleader must from the nature of the publication resort to a verbal description of the slanderous matter, as it would be when movements, postures, or pictures are used. Plaintiff could have stated his cause of action as it was in clear terms. He has not done so. It is not sufficient in this kind of a suit to state the substance of the language used or its meaning. We believe the general demurrer ought to have been sustained. See Townsend on Slander and Libel, sections 329 and to 335 inclusive.

The damages claimed by plaintiff are compensatory only. He says he suffered great damage in the conduct of his business and in his commercial standing. He does not ask for vindictive damages. The allegations of the petition were sufficient upon this subject.

This is a suit for libel. It was unnecessary for plaintiff to so characterize it by averment. In order to maintain the suit in Bastrop County it was not necessary, as appellant seems to think, for plaintiff to allege that defendant had an agent or representative in the county, and that its principal office was also in the county. It was enough to allege that it had at the time the suit was brought an agent or representative in the county, or that the principal office was in the county. Either allegation was sufficient.

The statute (Act of March 31, 1885) in force at the time the suit was brought provides that foreign private or public corporations doing business in this State may be sued "in any county where the cause of action or a part thereof accrued, or in any county where such company may have an agency or *representation* in the county in which the principal office may be situated, or," etc.

There is no comma after the word "representation" in the act, but to so read it would render it utterly senseless. Reading it with a comma it becomes perfectly clear and intelligible, and means that "suit may be brought in any county where the company has an agency, or representative, in the county where its principal office is situated, or," etc. The rules of construction demand that the act should be read so as to give it sense and meaning—the meaning it was evidently intended to have. The seeming confusion in the language and punctuation was corrected by amendment April 4, 1887.

We think there was no error as insisted by appellant in permitting witnesses in possession of the key to defendant's reports to explain what was indicated by reporting a merchant's standing "in blank." Plaintiff was reported in blank, and it was proper to explain by testimony what the blank represented. The petition should have contained allegations of the fact as published, with the proper innuendo, as a predicate for the testimony. The testimony showing the effect of such a rating upon

the credit of plaintiff—that is the general effect in commercial circles—was inadmissible.   It was only the opinion of the witnesses about a matter that the jury were capable of judging and which it was their duty to determine.   If the rating meant that plaintiff had no credit and no capital, and such rating was false, it was libelous and actionable *per se*, and the jury should have been left to estimate its effect without the influence of the opinions of witnesses, however competent to judge of such matters.    Townsend on Libel and Slander, 297.    If plaintiff suffered special damage by loss of credit, the injury and the cause of it were susceptible of proof, direct proof, by the persons with whom his credit suffered.    If there was a general loss of credit or break down of commercial character, and it was not susceptible of proof, it was a matter of opinion for the jury only, unaided by the opinions of outsiders.

There was some evidence, though slight, tending to show that plaintiff's credit was injured by the publication and that he suffered some damage. It was not the province of the court to judge of the weight of the evidence any more than it was to direct the jury as to the amount of damages they should find for the injury.   Besides this, it was the privilege of the jury to decide upon the general effect of the libel upon the plaintiff's character and credit as a merchant.   We can not, therefore, agree with appellant that the charge upon this subject was unauthorized by the evidence.   The assignment of error on this point is untenable.

The twelfth assignment of error is also untenable.   It does not appear from the evidence that if plaintiff was damaged at all it was by the publication made prior to January, 1885.   On the contrary, it does appear that if he was injured it was by the publication of January, 1885.   The jury expressly found their verdict on that publication, and, we think, correctly.   Limitation did not bar the publication of January, 1885.

There are several assignments of error predicated upon the refusal of the court to give requested charges of defendant, to the effect that the publication complained of was a privileged communication, and that such being the case malice in fact must be established to entitle a recovery. These assignments may all be considered together.

We can not accede to the proposition that the publications of commercial agencies, issued to their subscribers generally, are privileged communications.   They are only privileged when made in confidence to a subscriber who is interested in the pecuniary standing of the merchant reported.   In Erber v. Dun, tried in the United States Circuit Court of Arkansas, Colwell, District Judge, expressed the correct doctrine as we understand it.   He said:   "It is indisputable under the evidence that whatever was said orally by defendants about plaintiffs and their business, was said in good faith and in confidence to their subscribers, who were by reason of their business relations with the plaintiffs interested in knowing their financial and business standing, and in answer to requests

made by their subscribers in relation thereto. This being so, the statements thus made by defendants are privileged communications." Fed. Rep., vol. 12, p. 530.

A case more nearly in point is that of Sunderlin v. Bradstreet et al., decided by the Court of Appeals of New York. In that case plaintiffs were merchants; defendants were proprietors of a mercantile agency, and published a semi-annual volume giving the standing and financial credit of merchants in the United States and Canada, and also weekly sheets to their subscribers in the city of New York. In the weekly sheet they published that plaintiffs had failed; the statement was false. Plaintiffs called on defendants for the names of the persons furnishing the information, which defendants refused to give, but published a retraction of the report the next week. It was held that "the defendants in making the communication assumed the legal responsibility which rests upon all who without cause publish defamatory matter of others—that is, of proving the truth of the publication or responding in damages to the injured party." It was further said that "the communication of the libel to those not interested in the information was officious and unauthorized, and therefore not protected although made in the belief of its truth if it were in point of fact false." 46 N. Y. R., 188.

The very question under consideration was recently (in 1887) before the Court of Errors and Appeals of New Jersey. 49 N. J. Law R., 417. The court was divided, but a majority of the court held to the doctrine announced in Sunderlin v. Bradstreet. Both sides of the question were fully discussed in the case by the disagreeing judges, and such authorities as bear upon the subject were cited and reviewed.

We think the conclusion reached by a majority of the court the correct one. A commercial agency is a lawful business, and when conducted lawfully is a benefit to society and trade; but no just reason can be given for a rule that would exempt it from liability for false and defamatory publications where other citizens would not be exempt. If an individual voluntarily or for profit give false and injurious information to persons interested in the trade and commercial standing of another at the time the information is given, such communications would be privileged; but if he furnish the same information to others not so interested, to traders and merchants as a class, the communication would not be privileged. A commercial agency organized for the purpose of furnishing such information, keeping an intelligence office for profit, should, it seems to us, be held to the same accountability as the ordinary citizen. The acts of the agency, properly done, are no more meritorious or beneficial than when done by an individual, except that they may be more extended and cover more transactions. Impartial justice can not imagine a sound reason for a distinction in favor of an agency. It amounts to this at last and no more: The business of a commercial agency is lawful when

conducted lawfully; it will be protected so long as it does not transgress the rights of others.   It is not entitled to any privileges denied the ordinary citizen.   If it is a greater benefit to trade than the occasional acts of the individual because more extended and continuous in its operations, it is for the same reason capable of doing more harm by its false reports; its wrong doing is more difficult to remedy.   Because it has a monopoly of such intelligence is no reason for giving it a privilege to do a wrong by an improper publication of false statements, though the publication may be in the usual course of the business it has adopted.   It has the right then to the protection of a privileged communication when made to persons at the time interested in the information even though the information may be false; but when communicated to its general subscribers it has no such right.   If the publication is privileged no suit can be maintained against it unless express malice is shown to have instigated it, or such gross disregard of the rights of the person published as will be equivalent to malice in fact.   Even when the communication is not privileged malice must be shown to authorize a recovery, but in such case negative facts may indicate the malice, as that the publication was false and was made without legal excuse; the malice may be inferred from the fact of a false publication of libelous matter.   When the publication is privileged the malice so implied from the false and defamatory publication is deemed to have been met and rebutted, in which case, as before stated, malice in fact must be shown to warrant a recovery, and such malice is defined to be ill will, bad or evil motive, or such gross indifference to the rights of others as will amount to a willful or wanton act. Holt v. Parsons, 23 Texas, 9;  Behee v. The Mo. Pa. Ry. Co., 71 Texas, 424, and authorities there cited.   It was shown in this case that the alleged libelous matter was issued to defendants' general subscribers in the United States.   If the fact published was false and libelous malice could be inferred from that fact (though it would not be proper to point out to the jury in the charge the facts from which the malice could be inferred), and if it is shown that plaintiff's credit and reputation were injured by such publication he could recover damages therefor, besides any other special damages he may show he sustained in his business by reason of such publication.   There are a great number of assignments of error presented and apparently relied on in appellant's brief, some of which we may not have more than incidentally noticed, but we believe we have given our views of every material question raised on the trial, so that there need be no difficulty in the law of the case, as we understand it, upon another trial. Because of the errors above pointed out in the rulings of the court below we are of opinion the judgment should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Approved November 27, 1888.