## R. G. DUN & COMPANY ET AL. v. J. L. SHIPP.

No. 6571.   Decided February 26, 1936.
Rehearing overruled March 18, 1936.
(91 S. W., 2d Series, 330.)

*Lasseter, Simpson & Spruiell,* of Tyler, and *E. A. Tharp,* of Mineola, for plaintiff in error.

On proposition that the statement was not libelous per se, and that plaintiff, being an individual stockholder, was incompetent to recover for loss suffered in the sale of the business. Green v. Victor Talking Machine, 24 Fed. (2d) 378; Evans v. Brandon, 53 Texas, 56; International & G. N. R. R. Co. v.

Casey, 46 S. W. (2d) 669; Ormsby v. Ratcliffe, 117 Texas, 242, 1 S. W. (2d) 1084.

*Jones & Jones,* of Mineola, for defendant in error.

On the propositions mentioned cited. Aransas Pass Harbor Co. v. Manning, 63 S. W., 627; Pacific Fire Ins. Co. v. Morris, 12 S. W. (2d) 971; 14 C. J., 929; Davis v. Hill, 298 S. W., 526.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

The defendant in error, J. L. Shipp, sued the plaintiff in error, R. G. Dun & Company, for damages alleged to have resulted from the publication of a libel by the latter. The trial was before a jury on special issues, resulting in a judgment for Shipp for damages in the sum of $1000.00 for the depreciation of the value of his shares of the capital stock of the Service Drug Company, a corporation. The judgment also included a recovery of damages in another respect, but the Court of Civil Appeals reversed said judgment in the last mentioned respect, and reformed the judgment so as to eliminate such recovery, and as so reformed the judgment of the trial court was affirmed. 60 S. W. (2d) 502. Dun & Company has been granted the writ of error.

As the case stands before us, the main question for examination relates to the recovery by Shipp of $1000.00 for the depreciation of the value of his shares of capital stock. The facts in testimony, so far as presently material, are substantially as follows:

The Service Drug Company was a corporation engaged in the retail drug business in the town of Mineola. The amount of its capital stock was $7500.00. Shipp was the president of the corporation, and owned all the shares of its capital stock but two for $100.00 each. One of these shares was owned by Shipp's wife and the other by his son. Shipp's standing in the business world was good and his credit was good. He bought, on credit, in his own name, from time to time, as occasion required, all the merchandise for the corporation to carry on its drug business, and always paid his bills promptly. He owned unencumbered property, excluding exemptions, of the reasonable value of some $20,000.00. Dun & Company is a mercantile agency that compiles and furnishes to its subscribers, about every 50 or 60 days, certain reports in which the financial standing and credit rating of persons and concerns engaged in the retail drug business are exhibited. The subscribers of the company, to whom these reports are periodically distributed,

embraces wholesalers and jobbers all over the country who handle supplies for drug stores. The reports issued by Dun & Company about January 1, 1930, and distributed to its various subscribers, included the name of J. L. Shipp, and in connection with his name it was signified that he was engaged in the drug business at Mineola, and that he had property worth from three to five thousand dollars, and that he was "slow pay." As already indicated, this was false. As a result of the false publication, Shipp's good name and credit among wholesale dealers in drug supplies was impaired, and he could no longer buy merchandise for the drug business of the Service Drug Company, except by paying cash. After a time, on account of this impairment of Shipp's credit, the Drug Company deemed it expedient to sell all its assets, which consisted of its stock of merchandise and fixtures, and go out of business. The reasonable market value of said merchandise and the fixtures, at the time the sale was made, was $12,000.00; and the merchandise and fixtures were sold for $10,500.00. There is no testimony to show that the said corporation has been dissolved or that its shareholders have disposed of their shares of stock in the corporation. In respect to the sale mentioned Shipp testified:

"The fixtures bought for the Service Drug Company were new. They had been in the drug business just a little over a year. I was acquainted with the cash market value of drugs and articles handled in that drug store at the time I sold out. I know what the cash market value was. I was acquainted with that stock and fixtures at that time. I was acquainted with the selling price and wholesale price of drugs and such merchandise as was in the store at that time. The cash market value of that stock of merchandise and fixtures, including the showcases and the soda fountain and every thing, was approximately $12,000. I sold it and got for it $10,500. I sold it for less than it was worth on account of being handicapped and embarrassed by reason of this R. G. Dun report."

■■ Among the special issues submitted to the jury was one which reads as follows:

"Q. No. 4: What amount of damages, if any, do you find from a preponderance of the evidence, the plaintiff has sustained in depreciation of his stock in the Service Drug Company, directly and proximately caused by said report?"

The jury answered: "$1000.00"; and as already indicated, damages in said amount were awarded to Shipp by the trial court. As will be seen from our statement of the case, the

alleged depreciation of Shipp's stock in the Service Drug Company occurred in consequence of the sale, at a loss, of the merchandise and fixtures belonging to said corporation. This loss occurred in consequence of the voluntary act of the corporation itself, and was not the proximate result of the breach of any legal duty which Dun & Company owed the corporation. Nevertheless, the act of Dun & Company in publishing the libel in question was wrongful as to Shipp, as an individual, and for such depreciation of the value of his shares of stock in the corporation, as proximately resulted from the wrongful act, the law gives him a right of action. Stinnett v. Paramount-Famous-Lasky Corporation, 37 S. W. (2d) 145. However, there is no proof contained in the record before us to show that any depreciation in the value of the shares of stock belonging to Shipp has proximately resulted from the publication of the libel concerning him. Neither the real nor the market value of his shares of stock in the corporation, as a going concern, is shown except as such value may be inferred from the net value of the assets of the corporation. For aught that appears in the record, neither the real value nor the market value of his shares of stock had been impaired at the time the corporation voluntarily concluded to sell its physical properties and go out of business. As indicated above, Dun & Company are not legally responsible for the act of the corporation in this respect. The testimony goes no further than to show a loss sustained by the corporation as such, and in no event would Shipp, as an individual, have the right of recovery for such loss. Stinnett v. Paramount-Famous-Lasky Corporation, supra; Evans v. Brandon, 53 Texas, 56; Hamilton v. Cushman Mfg. Co., 15 Texas Civ. App., 338, 39 S. W., 641.

To the extent that the judgment of the Court of Civil Appeals affirms the judgment of the trial court awarding Shipp a recovery of the sum of $1000.00 damages, for the depreciation of his shares of stock in the Service Drug Company, the judgment of the Court of Civil Appeals is reversed, and, in that respect, the judgment of the trial court is reversed and the cause is remanded. In all other respects the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court February 26, 1936.
Rehearing overruled March 18, 1936.