Truman O'NEIL, Appellant,

v.

DUN & BRADSTREET, INC., Appellee.

No. 6040.

Court of Civil Appeals of Texas.

El Paso.

Nov. 12, 1969.

Rehearing Denied Dec. 10, 1969.

Rountree, Renner & Snell, Robert B. Snell, Lamesa, for appellant.

James G. Noland, Gene L. Jameson, W. B. Browder, Jr., Midland, for appellee; Stubbeman, McRae, Sealy & Laughlin, Midland, of counsel.

## OPINION

PRESLAR, Justice.

Appellant, Truman O'Neil, sued Dun & Bradstreet, Inc., appellee, alleging damages resulting from the circulation by Dun & Bradstreet of an incorrect report to the effect that appellant had filed a voluntary petition in bankruptcy. The trial court granted a directed verdict for the defendant-appellee at the conclusion of the evidence of the plaintiff. It is from such directed verdict that this appeal is taken, and we are of the opinion that the trial court erred in concluding that the communication was privileged.

On March 24, 1965 Dun & Bradstreet issued out of its Amarillo, Texas, office a "Special Notice" that appellant O'Neil, on the day before, had filed a voluntary petition in bankruptcy in the Federal District Court, Lubbock, Texas, listing assets of only $6,261.00 and debts of $323,350.00. This "Special Notice" was sent to some fourteen subscribers of Dun & Bradstreet located in various cities, to-wit, Midland, Odessa, El Paso, and Dallas, Texas, and Chicago, Illinois. The report was not true. The petition in voluntary bankruptcy was that of a brother of appellant, who had no business connections with appellant; but through error of Dun & Bradstreet, it was attributed to appellant. A "Correction Notice" was circulated by Dun & Bradstreet the following day.

Appellant's Assignment of Error No. 2 is that the trial court erred in concluding that the communication in dispute was a privileged one. As a preliminary to a discussion of that question and for a better understanding of the question, certain well-settled principles of law applicable to the case should be noted. It should be noted that the "Special Notice" in this case libeled appellant as a matter of law under the statutory definition of Texas Revised Civil Statutes Annotated, Article 5430: "A libel is a defamation expressed in printing or writing * * * tending to injure the reputation of one who is alive, and thereby expose him to * * * financial injury * * *." A false charge of bankruptcy or insolvency is actionable per se. Hirshfield v. Ft. Worth Nat. Bank (Tex.Com.App.), 83 Tex. 452, 18 S.W. 743, 15 L.R.A. 639; Bradstreet v. Gill (Tex. Com.App.), opinion adopted by Supreme Court, 72 Tex. 115, 9 S.W. 753, 2 L.R.A. 405. No liability attaches if the publication is privileged, and certain publications are privileged by statute. Tex.Rev.Civ.Stat. Ann., Art. 5432. But the privilege here claimed is not one provided by statute The privilege here relied upon by the defendant is something less than the absolute privilege provided by statute, and is said

to be "conditional", "defeasible", or "qualified".

An otherwise defamatory statement or publication has been excused by the courts under many and varied circumstances because of the interest or duty of the publisher and some corresponding interest of the recipient. One who claims his communication is privileged has the duty to establish it. Dealers National Insurance Company v. Rose, Tex.Civ.App., 396 S.W.2d 535. Existence of the privilege is a question of law when the language used is unambiguous or when the facts and circumstances surrounding the published defamation are undisputed. Christy v. Stauffer Publications, Inc., 437 S.W.2d 814 (Tex.1969); Perry Bros. Variety Stores v. Layton, 119 Tex. 130, 25 S.W. 2d 310 (Tex.Com.App.). We are of the opinion that it is a law question in this case. When the privilege is shown to exist, the burden then shifts to the other party to show that it has been lost. Browning v. Gomez, Tex.Civ.App., 332 S.W.2d 588; Arant v. Jaffe, Tex.Civ.App., 436 S.W.2d 169; International & G. N. Ry. Co. v. Edmundson, 222 S.W. 181 (Tex.Com.App. 1920). Some confusion of words and terms is found in the cases in passing on questions of the "existence" of the privilege and "loss" of the privilege, and we hasten to add that we are here discussing the defendant's burden of showing the existence of the privilege, and since we are of the opinion that such burden was not met, we do not reach the question of its loss—by malice, excessive publication, or other abuse. To say that the privilege does not exist because there was no malice, is to put the cart before the horse.

The defamatory publication in this case was sent to all subscribers of Dun & Bradstreet who, during the preceding year, had made inquiry about appellant O'Neil. The proof is that this was "company policy", a "continuing service" to send these reports to subscribers who made inquiry about a particular individual within a year preceding. The basis for the claimed privilege, then, is this—defamatory matter was sent to subscribers of Dun & Bradstreet with the understanding that it was confidential, and such information was given only to subscribers who had requested information on O'Neil within the prior year. Appellee would add to the above that such communication was made pursuant to a legitimate and useful business for a proper consideration and incident to a contractual duty on the part of Dun & Bradstreet to provide such information to its subscribers. This seems to argue that the law should protect one who spreads false information about another—if it is for pay, or contracted for. One defamed could care less, and it would seem the gossip is the more offensive if done for hire and pay. We will discuss later the reasons for providing the protection of privilege to mercantile agencies.

That portion of the qualified privilege rule applicable to the situation here presented is that the privilege is extended to a publisher of the defamation who has an interest or duty and makes the communication to one having a corresponding interest or duty, and we will only note it briefly, for there is more specific law applicable to mercantile agencies such as appellee. It must be noted that Dun & Bradstreet had no interest in the subject matter of the defamation, as such. It was not extending credit to O'Neil or doing business with him and had no interest in whether he was bankrupt or solvent. Because of certain cases cited by appellee, it should also be noted that this publication is not one of those involving freedom of the press or the right of the public to know. As to the present interest of those to whom a communication may be sent, two cases will serve to illustrate the Texas law on that point for our purposes here. In Mayfield v. Gleichert, 437 S.W.2d 638 (Tex. Civ.App.1969, n. w. h.), the alleged defamation was the report of one doctor about another, made to the medical staff of a hospital, from which staff the complainant was subsequently excluded. In holding

that the matter was privileged, the court noted that the statements were made on a subject matter which the doctor had a duty and interest to protect, and were made only to persons who had a corresponding interest and duty. In the case of Perry Bros. Variety Stores v. Layton, 119 Tex. 130, 25 S.W.2d 310 (1930), the Commission of Appeals answered a certified question as to whether the communication was privileged. The defamation was the accusation by the manager of the store, in the presence of two unidentified customers, that the plaintiff had taken a pair of "cute" bloomers. In answer to the question, the Commission of Appeals said:

"The precise question to be determined here is whether or not the fact that the utterances of Barr, imputing the crime of theft to Mrs. Layton, were made in the presence and hearing of the two women customers who had no interest in the subject-matter of the communication, and whose presence was casual and not by design of Barr, renders the communication unprivileged. In conference with the Supreme Court, we have been instructed to hold that the defamatory statements of Barr lost their privileged character by reason of the fact that same were made in a store open to the general public, and in the presence and hearing of customers who were there on the implied invitation of the appellant, and who had no interest in the subject-matter of the statements."

Appellee, Dun & Bradstreet, is a mercantile agency, "a credit reporting agency". It gathers financial and background information and submits it in report form to its subscribers. Such reports state that they are furnished as an aid in determining the advisability of granting credit or insurance. The report is issued at the request of a subscriber and, as noted earlier, following such a request the one making the request receives copies of any additional releases or reports on that same account for a year following. As to whether such agencies' reports are privileged, the statement is made, and cases noted, in American Jurisprudence (2d):

"While the general rule that communications made in good faith by a person in the discharge of some social or moral duty, or on the grounds of an interest in the party making or receiving them, are privileged, has in some jurisdictions been held not to apply to credit-reporting agencies, it has been held in the great majority of cases that reports of mercantile or other credit-reporting agencies, furnished in good faith to one having a legitimate interest in the information, are privileged. It has been stated that the reason for the privilege is that in furnishing information the agencies are supplying a legitimate business need, and that without the protection of the privilege few would undertake to furnish such information, and the cost thereof would be high, if not prohibitive."

15 Am.Jur.2d, Collection and Credit Agencies, § 22, page 573.

And in Section 24 of the same works, it is stated that the privilege is dependent upon the interest of the person receiving the report:

" * * * it must have been furnished to persons having an interest in the information reported * * * But the report of a credit-reporting agency loses its privileged character if it is sent indiscriminately to subscribers generally, or to those not inquiring concerning, or interested in knowing, the condition and financial standing of the person reported upon."

Among the cases cited for the proposition that the privilege is lost if sent to subscribers generally is the Texas case of Bradstreet Co. v. Gill, 72 Tex. 115, 9 S.W. 753, which we will discuss later. This same case, and the case of R. G. Dun & Co. v. Shipp (Tex.Civ.App.1933), 60 S.W.2d 502, partly reversed on other grounds, 127 Tex. 80, 91 S.W.2d 330, are cited for the above rule of law in 30 A.L.R.2d 783, Def-

amation—Credit Reports. Professor William L. Prosser, in his "Handbook of the Law of Torts", Third Edition (1964), in commenting on mercantile credit agencies, at page 810, says:

> "They were denied any privilege in England, on the ground that they were mere business ventures trading for profit in the characters of other people. Although there are American courts which have agreed wtih this, the great majority of them have recognized that such agencies perform a useful business service for the benefit of those who have a legitimate interest in obtaining the information, and who request the agency to obtain it for them. Such agencies are therefore held to have a qualified privilege, where their inquiries are honestly made and the information is furnished to subscribers in good faith. *There is general agreement, however, that the privilege is limited by the extent to which the particular subscriber to whom the publication is made has an apparent, present interest in the report*; and that in so far as there is general publication to those without such an interest, the risk of false information is one to be borne by the business." (Emphasis ours).

We think the italicized portion in the above quotation is a good statement of the Texas law applicable to the case at bar. Extensive research has found only two Texas cases on the subject where mercantile or credit-reporting agencies were involved—Bradstreet v. Gill and Dun v. Shipp, supra.

Bradstreet v. Gill was an action for making a false report of the plaintiff's business standing. He was reported "in blank", which, decoded, apparently meant that he had no capital and no credit rating. In ruling on assignments of error predicated upon the court's refusal to give defendant's requested charge that the communication was privileged, the Supreme Court held: "We cannot accede to the proposition that the publications of commercial agencies, issued to their subscribers generally, are privileged communications. They are only privileged when made in confidence to a subscriber who is interested in the pecuniary standing of the merchant reported." In the course of its opinion the Court cited, as in point, a New York case, Sunderlin v. Bradstreet, 49 N.Y. 188, in which the mercantile agency published in its weekly sheet to subscribers that the plaintiff's business had failed. Quoted from that opinion was the statement, " '* * * the communication of the libel to those not interested in the information was officious and unauthorized, and therefore not protected, although made in the belief of its truth * * *' ". Our Supreme Court went on to say:

> "A commercial agency is a lawful business, and, when conducted lawfully, is a benefit to society and trade; but no just reason can be given for a rule that would exempt it from liability for false and defamatory publications, when other citizens would not be exempt. If an individual voluntarily or for profit give false and injurious information *to persons interested* in the trade and commercial standing of another *at the time the information is given*, such communications would be privileged; but if he furnish the same information to others not so interested,—to traders and merchants, as a class,—the communication would not be privileged."

And later in the opinion the court says,

> "It has the right, then, to the protection of a privileged communication, when made to persons *at the time interested* in the information, even though the information may be false * * *." (Emphasis ours).

The proof in the case before us does not show what, if any, interest the fourteen recipients of the false information had in it; nor does it show they had any interest at the time the information was given. Sending the information to all who had made some kind of inquiry during the past year does not, to our minds, amount to sending

to those with an apparent present interest. Bradstreet v. Gill was decided in 1888 and was followed in 1933 by R. G. Dun & Co. v. Shipp, supra. Dun & Co. was a mercantile agency that compiled and furnished to its subscribers, primarily drug wholesalers and their salesmen, about every 50 or 60 days, certain reports in which the financial standing and credit rating of persons and concerns engaged in the retail drug business were exhibited. In the publication, Shipp, who was in the retail drug business, was given a rating that he was entitled to a limited credit and was slow pay, and that he was worth only three or four thousand above debts and exemptions. In upholding a verdict for Shipp, the Court of Civil Appeals held:

"Although it may be said from the proof that the publication was made by the mercantile agency in good faith and in honest belief of its truth, yet the publication was in the circumstances false and was not privileged, as limited to creditors or those specially inquiring of the appellee."

The Commission of Appeals, whose opinion was adopted by the Supreme Court, affirmed that portion of the judgment, but reversed on a damage issue. We conclude that the false communication that the appellant in this case was bankrupt was not privileged where it is not shown that the recipients had any interest in his financial standing or had any such interest at the time of such communication. Even if interested a year ago, one could now care less.

■ Appellant's sixth point of error complains of the action of the trial court in excluding his testimony pertaining to lost profits. Basis of the objection was that his was a "new business" and such damages for loss of profits can be recovered only where there is an established business. The true question is the rule of certainty, with a distinction to be made between uncertainty as to the amount and uncertainty as to the fact of legal damages.

As we view the testimony offered, it was subject to question as to the amount and would, therefore, not be objectionable as too speculative. Assuming the testimony would be the same on another trial, it would be admissible. Since the matter is to be tried again, we commend to the trial court and the parties, for reading, the case of Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097, for a discussion by the Supreme Court of the rule of certainty as to lost profits. See, also, Justice Norvell's opinion in Schoenberg v. Forrest, Tex.Civ.App., 253 S.W.2d 331.

The judgment of the trial court is reversed, and the cause remanded for trial.