**DUN AND BRADSTREET, INC., Petitioner,**

v.

**Truman O'NEIL, Respondent.**

**No. B–1929.**

Supreme Court of Texas.

June 24, 1970.

Rehearing Denied July 22, 1970.

Stubbeman, McRae, Sealy, Laughlin & Browder, W. B. Browder, Jr., and James G. Noland, Midland, for petitioner.

Rountree, Renner & Snell, Robert B. Snell, Lamesa, for respondent.

HAMILTON, Justice.

Plaintiff-respondent, Truman O'Neil, brought this suit for libel against defendant-petitioner, Dun & Bradstreet, Inc., because as a part of its credit reporting services defendant had erroneously reported by "Special Notice" that plaintiff had filed a voluntary petition in bankruptcy. The "Special Notice" had been sent to fourteen of defendant's subscribers who had requested credit information about plaintiff

during the preceding twelve months. Defendant alleged conditional privilege as a defense. At the close of plaintiff's evidence the trial court ordered an instructed verdict for defendant. The Court of Civil Appeals reversed the trial court's judgment, holding that defendant's conditional privilege had not been shown because the evidence did not reveal whether or not the fourteen persons who received the "Special Notice" were interested in plaintiff's financial status *at the time* the "Special Notice" was sent out. 448 S.W.2d 153. We reverse the judgment of the Court of Civil Appeals and affirm the trial court's judgment.

Defendant is a mercantile agency which provides credit information to its subscribers under a subscription agreement. The credit reports state that such information is furnished in strict confidence. As part of the "arrangement" with its subscribers defendant offers a "continuing service" which means that for a period of twelve months after a subscriber requests credit information about a particular person, defendant will furnish to that subscriber all additional up-dated information about that person.

On March 24, 1965, defendant issued a "Special Notice" declaring that plaintiff had filed a voluntary petition in bankruptcy. This notice was sent to all defendant's subscribers who during the preceding twelve months had requested credit information about plaintiff. There were fourteen such subscribers. The next day defendant issued the following correction notice to the same fourteen subscribers:

"Any report to the effect that Alvin Truman O'Neil filed voluntary petition in bankruptcy is erroneous and should be disregarded.

"A voluntary petition in bankruptcy was filed by Alvin Numan O'Neil, a brother, but this did not in any way involve Alvin Truman O'Neil."

The Court of Civil Appeals stated that plaintiff had been libeled as a mat-ter of law, that defendant relied upon a conditional privilege as a defense, that a credit reporting agency is entitled to a conditional privilege if certain requirements are met, and that once the conditional privilege is shown to exist the burden is on the plaintiff to show that the privilege is lost, that is, plaintiff must then show actual malice. We are in agreement with these statements. Likewise, we are in agreement with the following general rules of law expressed by the Court of Civil Appeals regarding the requirements which defendant had to meet in order to be entitled to the defense of conditional privilege:

"* * * it has been held in the great majority of cases that reports of mercantile or other credit-reporting agencies, furnished in good faith to one having a legitimate interest in the information, are privileged.

"* * * it must have been furnished to persons having an interest in the information reported. * * * But the report of a credit-reporting agency loses its privileged character if it is sent indiscriminately to subscribers generally, or to those not inquiring concerning, or interested in knowing, the condition and financial standing of the person reported upon." 15 Am.Jur.2d, Collection and Credit Agencies, § 22 and § 24 respectively.

"There is general agreement, however, that the privilege is limited by the extent to which the particular subscriber to whom the publication is made has an apparent, present interest in the report; and that in so far as there is general publication to those without such an interest, the risk of false information is one to be borne by the business." Prosser, Handbook of the Law of Torts (Third Edition, 1964) at page 810.

"If an individual voluntarily or for profit give false and injurious information to persons interested in the trade and commercial standing of another at the time the information is given, such

communications would be privileged; but if he furnish the same information to others not so interested,—to traders and merchants, as a class,—the communication would not be privileged." Bradstreet Co. v. Gill, 72 Tex. 115, 9 S.W. 753, at page 757 (1888).

Our disagreement with the Court of Civil Appeals stems from that Court's interpretation of the general rules of law hereinabove quoted as applied to the facts here involved. The Court of Civil Appeals held that defendant's conditional privilege had not been shown to exist because there was no showing that defendant's fourteen subscribers had any interest in the financial status of plaintiff on *March 24, 1965*, the date on which the "Special Notice" of bankruptcy was sent out, even though it was shown that these fourteen subscribers had inquired about plaintiff's status during the preceding twelve months. Apparently, the Court relied primarily upon the statement "persons interested * * * at the time the information is given" taken from Bradstreet Co. v. Gill, supra.

We hold as a matter of law defendant's conditional privilege was shown to exist. "Such privilege is termed conditional or qualified because a person availing himself of it must use it in a lawful manner and for a lawful purpose. The effect of the privilege is to justify the communication when it is made without actual malice." Buck v. Savage, 323 S.W.2d 363 (Tex.Civ.App.1959) writ ref'd, N.R.E. Defendant did not release credit information to its subscribers in general as was done in Bradstreet Co. v. Gill, supra, nor did defendant publish the information "for general use of subscribing traveling salesmen and persons engaged in merchandising" as was done in R. G. Dun & Co. v. Shipp, 60 S.W.2d 502 (Tex.Civ.App.1933) reversed on issue of damages, 127 Tex. 80, 91 S.W.2d 330. Rather, defendant sent the "Special Notice" of bankruptcy in "strict confidence" only to subscribers who during the preceding twelve months had requested credit information about plaintiff in partic-

ular. Under their contractual "arrangement" defendant was obligated to send additional information about plaintiff to the fourteen subscribers who had requested information about plaintiff during the preceding twelve months. When the subscribers paid their subscription price their payment entitled them to defendant's one year "continuing service." Such an arrangement shows that the subscribers were not only interested in information at the time of their initial request but that they were also interested in subsequent information. Defendant's "continuing service" could be for such a long period of time as to be unreasonable but we hold that one year is not unreasonable. Therefore, we hold that defendant's one year "continuing service" policy is sufficient to meet the requirement that the libelous statement be sent only to "persons interested * * * at the time the information is given" and that the libelous statement made by defendant about plaintiff was conditionally privileged.

Our holding hereinabove expressed is supported by statements made by courts in other jurisdictions. Dun & Bradstreet, Inc. v. Robinson, 345 S.W.2d 34 (Ark.Sup. 1961) involved a libel suit wherein Dun & Bradstreet issued a "special notice report" to thirty-six of its subscribers who allegedly had theretofore requested information pertaining to Robinson. The Court stated that it agreed with the trial court that the publications were made upon conditionally privileged occasions. The Court also cited the general rule that " * * * the defense of qualified privilege is available to a mercantile agency relative to reports referring to credit or financial standing and furnished subscribers having an interest in the matter." In A. B. C. Needlecraft Co. v. Dun & Bradstreet, Inc., 245 F.2d 775 (C. C.A., 2nd, N.Y.1957) Dun & Bradstreet had issued a supplemental report to ten of its subscribers who had previously inquired about A. B. C Needlecraft Co. The Court stated that Dun & Bradstreet's " * * * major premise—that the statement was qualifiedly privileged—is undoubtedly correct and was so accepted by the trial

court." H. E. Crawford Co. v. Dun & Bradstreet, Inc., 241 F.2d 387 (C.C.A.4th, N.C. 1957) involved a libel suit in which Dun & Bradstreet had mailed a report concerning the H. E. Crawford Co. to forty-three of Dun & Bradstreet's subscribers, "each of whom had specially requested credit reports of and concerning Crawford." The Court held that "The delivery of financial information by Dun & Bradstreet * * * to subscribers, and only to subscribers, specifically requesting reports on Crawford, would prima facie fall within the scope of privileged communications; that is, the occasion was privileged."

Having found that defendant's conditional privilege exists, we now turn to the question of actual malice, such malice being required to overcome defendant's privilege. Plaintiff contends that there is evidence to raise a fact issue on the question of malice. The evidence reveals that defendant's Amarillo file supervisor received a report by telephone from defendant's Lubbock reporter. The reporter informed the supervisor that Alvin *Numan* O'Neil had filed a voluntary petition in bankruptcy and that he might be connected with Lamesa Mack Sales. The Amarillo file supervisor then pulled defendant's file on Lamesa Mack Sales with which Alvin *Truman* O'Neil, plaintiff, was connected. This file and the notes taken during the telephone conversation with the Lubbock reporter were taken to Mr. Maddy, defendant's reporting and service manager in the Amarillo office. His duty was to check the bankruptcy information and compose the "Special Notice" of bankruptcy. The telephone notes delivered to him contained the name Alvin *Numan* O'Neil but not Alvin *Truman* O'Neil, plaintiff. He made no comparison between the bankruptcy information and plaintiff's financial information recorded in defendant's files approximately five months earlier. He testified that had he made such a comparison of the information it might have raised a question in his mind and that he understood the seriousness of bankruptcy notices. He further testified as follows:

"I didn't look at it, I'm afraid, as carefully as I should, because we had some people in—a representative in from our regional office in Dallas, and when you've got an executive breathing down your neck, well I'm afraid you're not as careful."

The telephone notes stated the name of the attorney and the court involved in the voluntary petition in bankruptcy. Maddy testified that in order to verify his information it would have been simple to telephone the attorney and/or the clerk of the court in which the petition in bankruptcy was filed. However, there is no evidence that Maddy or any other employee of defendant knew that the "Special Notice" of bankruptcy was false or had any conscious doubts regarding its truth or falsity.

■■ We hold that there is no probative evidence to raise a fact issue on the question of actual malice. El Paso Times, Inc. v. Trexler, 447 S.W.2d 403 (Tex.1969) was a libel suit involving the question of whether or not the circumstances surrounding the publication of the alleged libelous statements constituted evidence of malice necessary to overcome a privileged publication. In *El Paso Times* this Court defined actual malice the same as did the United States Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed.2d 686, that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." The *New York Times* definition of actual malice which this Court applied in *El Paso Times* is likewise applicable in the instant case, all three cases being libel suits, all three cases involving publishers' privileges and all three cases requiring malice to overcome the privileges. Insofar as the definition of actual malice is concerned we do not think the instant case involving a conditional privilege is distinguishable from the *New York Times* and *El Paso Times* cases which involve First

Amendment Constitutional privileges. In *El Paso Times* this Court held:

> "Failure to investigate the truth or falsity of a statement before it is published has been held insufficient to show actual malice. Negligence or failure to act as a reasonably prudent man is likewise insufficient."

See New York Times Co. v. Sullivan, and other cases cited in El Paso Times, Inc. v. Trexler. Plaintiff's evidence may establish that defendant was negligent in failing to verify the bankruptcy information but the evidence does not raise a fact issue regarding whether or not the defendant acted "with knowledge that it was false or with reckless disregard of whether it was false or not."

Having found that the evidence shows that defendant's publication was conditionally privileged and having found that plaintiff's evidence fails to raise a fact issue on the question of actual malice, we conclude that the trial court properly ordered an instructed verdict for defendant.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

REAVLEY, Justice (dissenting).

Dun & Bradstreet did enjoy a conditional privilege to publish to inquiring subscribers information on Truman O'Neil. Had it received a report that Truman O'Neil was bankrupt, because of the duty to those subscribers, it could have circulated the report—even, in the absence of actual malice, if the report were later proved to have been false.

But Dun & Bradstreet received no report on Truman O'Neil. Without any source at all, it published a wholly false statement. I would hold that there is no privilege to *generate* and publish false reports, even by innocent mistake. In the alternative, I would hold that the privilege is lost by the failure to exercise care in identification of the subject.